# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STACY RYAN,<br><br>    Plaintiff,<br><br>vs.<br><br>CONSTANCE CONNIE RYAN,<br>AND STRECK, INC.,<br><br>    Defendants. | 8:15CV312<br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion to Alter or Amend the Judgment or in the Alternative to File an Amended Complaint (Filing No. 20) ("Motion to Alter") and the Motion for Leave to File an Amended Complaint (Filing No. 23) ("Motion to Amend") (collectively "Motions"), filed by Plaintiff Stacy Ryan ("Stacy Ryan"). For the reasons discussed below, the Motions will be denied.

## BACKGROUND

The following is a summary of the facts that were alleged in Stacy Ryan's Complaint (Filing No. 1), assumed true for purposes of the Court's Order (Filing No. 18) ("Order") and Judgment (Filing No. 19), granting the Motions to Dismiss (Filing Nos. 6 & 10) filed by Defendant Constance Ryan ("Connie Ryan") and Streck, Inc. ("Streck") (collectively "Defendants") and dismissing the case.[1]

Stacy Ryan is the daughter of Dr. Wayne Ryan ("Dr. Ryan"), founder of Streck. Stacy and her siblings each were given a large amount of Streck voting and non-voting stock in 1985. On November 10, 2008, Stacy Ryan and Streck executed a redemption agreement ("Redemption Agreement"), which, among other things, gave Streck the right

---

[1] A fuller factual history can be found in the Court's Order. (See Filing No. 18 at 1–8.)

to redeem Stacy Ryan's shares at Streck's election. According to the terms of the Redemption Agreement, the price to be paid for these shares was to be "the fair market value of the stock (subject to any applicable discounts or adjustments) as set forth in the most recent valuation prepared by Juris Valuation Advisors, LLC . . . ." (Filing No. 1 at ECF 34 ¶ 9.)

In a letter dated June 19, 2012, Dr. Ryan informed Stacy Ryan that Streck elected to redeem her shares; she was required to sign an enclosed stock purchase agreement ("Purchase Agreement"); and upon Streck's receipt of the executed Purchase Agreement Streck would send Stacy Ryan a check for $9,280,235. The redemption price was calculated based on the most recent valuation by Juris Valuation Advisors, LLC ("Juris"), dated September 28, 2011, reflecting the value of the stock as of July 29, 2011 ("2011 Valuation").

On June 28, 2012, Stacy Ryan sent Dr. Ryan and Connie Ryan—Streck's CEO—a request for Streck's corporate records, pursuant to Neb. Rev. Stat. § 21-20,183. Streck refused the request in a letter dated July 3, 2012, because Stacy Ryan was no longer a Streck shareholder. Although Streck maintained that Stacy Ryan was no longer a shareholder of Streck, Streck's attorneys continued to request that Stacy Ryan execute the Purchase Agreement.

On August 22, 2012, Stacy Ryan executed the Purchase Agreement, which stated that the purchase price for Stacy Ryan's shares was $9,280,235 and that such an amount was equal to, or greater than, the purchase price that would be due under the Redemption Agreement.

A June 5, 2014, Juris valuation valued Streck's voting stock at $8.33 per share and its non-voting stock at $8.09 per share as of March 7, 2013 ("2014 Valuation").

On August 21, 2015, Stacy Ryan filed this action alleging violations of the Securities Act of Nebraska[2] and the Exchange Act of 1934,[3] fraudulent misrepresentation and inducement, breach of fiduciary duty, shareholder oppression, conversion, tortious interference with business expectancy, unjust enrichment, and breach of contract. Relevant to the present Motions, Stacy Ryan alleged in her Complaint that the Juris Valuation used at the time of redemption did not reflect the actual fair market value of her stock.

In its Order and Judgment, the Court dismissed all of Stacy Ryan's claims, finding that her allegation that she was not paid the fair market value of her stock failed to state a claim upon which relief could be granted. This was because the Court determined that Stacy Ryan alleged that she was paid an amount calculated in accordance with the Redemption Agreement. In other words, although Stacy Ryan alleged that the price she received for her stock did not reflect the actual fair market value at that time of redemption, she did not dispute that the price reflected the fair market value as calculated by the 2011 Valuation, which she admitted was the most recent Juris valuation at the time. Because this was all the Redemption Agreement required Streck to pay to redeem the stock, Stacy Ryan could not establish that any wrongful conduct by Defendants caused her to incur a loss, nor that Defendants breached the Redemption Agreement. This finding proved fatal to all of her claims, and the Court granted Defendants' Motions to Dismiss.

---

[2] Neb. Rev. Stat. §§ 8-1101 to 8-1123 (Reissue 2012).
[3] 15 U.S.C. §§ 78(a)–78oo.

3

On March 17, 2016, Stacy Ryan filed the present Motions before the Court, asking this Court to alter its Judgment, pursuant to Federal Rule of Civil Procedure 59(e), or grant her leave to amend her Complaint.

**STANDARD OF REVIEW**

"Rule 59(e) motions serve the limited function of correcting 'manifest errors of law or fact or to present newly discovered evidence.'" *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (quoting *Innovative Home Health Care v. P. T.-O. T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)). "Such motions cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment." *Id.* (internal quotation marks omitted) (quoting *Innovative Home Health Care v. P. T.-O. T. Assoc. of the Black Hills*, 141 F.3d 1284, 1286 (8th Cir. 1998)).

"To prevail on a Rule 59(e) motion [on the basis of newly-discovered evidence], the movant must show that (1) the evidence was discovered after [judgment was entered]; (2) the movant exercised due diligence to discover the evidence before [judgment was entered]; (3) the evidence is material and not merely cumulative or impeaching; and (4) [consideration of] the evidence would probably produce a different result." *Id.* (citing *U.S. Xpress Enter. Inc. v. J.B. Hunt Transp., Inc.*, 320 F.3d 809, 815 (8th Cir. 2003)).

**DISCUSSION**

Stacy Ryan argues that the Motion to Alter should be granted both because the Judgment was "clearly wrong and . . . adherence to the decision would create a manifest injustice," and because she has discovered new evidence since the briefing

4

on the Motions to Dismiss was completed. (*See* Filing No. 21 at 2.) Specifically, Stacy Ryan alleges that she has discovered (i) a valuation by Juris of Streck's stock ("2012 Valuation") that predates the 2014 Valuation and that shows a higher valuation of stock than what she was paid; (ii) that the 2012 Valuation revealed the value of the stock in the 2011 Valuation was reduced by stock discounts not allowed under Nebraska law; and (iii) that she recently discovered a Streck investor whose stock Streck similarly redeemed pursuant to the Redemption Agreement and who felt, as Stacy Ryan did, that the price paid was below fair market value.

**I. Sufficiency of Pleading in Alleging Manipulation of Juris Valuation**

Stacy Ryan contends it was clear error for this Court to hold that she did not plead facts sufficient to allege that Defendants manipulated the 2011 Valuation by withholding material information from, or providing false information to, Juris. In her brief opposing Defendants' Motions to Dismiss, Stacy Ryan argued that she pled enough facts for the Court to "infer" that Defendants manipulated the 2011 Valuation. (Filing No. 15 at 14.) This was because she alleged the 2014 Valuation valued the stock much higher than the 2011 Valuation with no material change in Streck's operation between 2011 and 2013.

She has re-argued this point in support of her present Motions, but the Court remains unpersuaded. The Court did not infer a fraudulent scheme, because none was mentioned in the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) ("[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'").

5

The Complaint acknowledged that under the terms of the Redemption Agreement, Streck could repurchase Stacy Ryan's shares at Streck's sole election for fair market value *as determined by the most recent juris valuation*. (*See* Filing No. 1 at 34 ¶ 9.) The Complaint alleged that the actual fair market value at the time of redemption was more than Streck paid Stacy Ryan; it did not allege that the price paid was less than the most recent Juris Valuation,[4] which was the agreed upon vehicle for determining the value of Stacy Ryan's shares. Accordingly, the Complaint did not allege that any wrongdoing by Defendants caused Stacy Ryan to suffer a loss, or that any conduct of the Defendants breached the Redemption Agreement.[5] Thus, all of her claims failed.

For this reason, her Complaint was insufficient, and the Court finds no clear error in the Judgment dismissing her case.

---

[4] In its Order, the Court held that the 2011 Valuation was necessarily embraced by Stacy Ryan's Complaint because the 2011 Valuation's contents were alleged and no party questioned its authenticity. (*See* Filing No. 18 at 5 n.3 (citing *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)).) Stacy Ryan disputes the propriety of that holding because, she argues, she "clearly questioned the authenticity of any document produced by Connie Ryan." (Filing No. 26 at 10.) In so arguing, Stacy Ryan mistakes authenticity for accuracy. In her Complaint, Stacy Ryan alleged that the 2011 Valuation was stale, and thus inaccurate, but she did not dispute that the price she was paid corresponded to the price actually set forth in the 2011 Valuation.

[5] Stacy Ryan provides several examples from her Complaint where she stated that the price paid was lower than fair market value or where she stated that the amount she received violated the Redemption Agreement. (Filing No. 21 at 4–5.) This language was not enough to save her claims, because it was contradicted by other facts alleged in the Complaint, *i.e.*, that the price paid was calculated in accordance with the Redemption Agreement. *See Williams v. First Nat. Bank of St. Louis*, No. 4:14CV01458 ERW, 2014 WL 5800199, at *4 (E.D. Mo. Nov. 7, 2014) (quoting *Perry v. NYSARC, Inc.*, 424 Fed. Appx. 23, 25 (2d Cir. 2011)) ("Courts need not accept as true 'factual assertions that are contradicted by the complaint itself, [or] by documents upon which the pleadings rely . . . .'"); *see also Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)) ("[S]ome factual allegations may be so indeterminate that they require 'further factual enhancement' in order to state a claim.").

## II. Newly Discovered Evidence

Stacy Ryan next argues that she discovered new evidence subsequent to the briefing on the Motions to Dismiss that merits altering the Court's Judgment. For the reasons discussed below, all the new evidence fails to meet the threshold for granting relief under 59(e) because none of it would have "produce[d] a different result" than that reached in the Court's Order and Judgment.[6] *See Metro. St. Louis Sewer Dist.*, 440 F.3d at 933 (citing *U.S. Xpress Enter. Inc.*, 320 F.3d at 815)).

### a. 2012 Juris Valuation

Stacy Ryan alleges that after the briefs on the Motion to Dismiss were filed, Dr. Ryan provided her a copy of the 2012 Valuation, which valued Streck Stock at $6.84 per share, discounted to $4.42 per voting share and $4.21 per non-voting share as of July 27, 2012. (Filing No. 21 at 11–12.) The discovery of this new evidence does not merit altering the Judgment because the existence of this report does not reveal a breach of the Redemption Agreement, which required Streck to pay Stacy Ryan an amount according to the most recent Juris Valuation. Streck informed Stacy Ryan that it had redeemed her shares in a letter dated June 19, 2012. The 2012 Valuation valued Streck stock as of July 27, 2012, more than a month after the redemption. The new evidence does not contradict that at the time of redemption, the 2011 Valuation was still the most recent valuation of Streck stock. Thus, the 2012 Valuation would not have changed the Court's holding had it been presented, and its discovery does not merit altering the Judgment.

---

[6] Because the Court has determined that Stacy Ryan has not met this element of her 59(e) Motion, the Court need not decide whether any other element is satisfied.

### b. Stock Discounts

Stacy Ryan alleges that the 2012 Valuation revealed that the 2011 Valuation applied certain stock discounts in determining the value of her stock. According to Stacy Ryan, discovery of these discounts merits altering the Judgment because Nebraska law disallows stock discounts in this situation and because under the Redemption Agreement she was entitled to negotiate any stock discounts. Both arguments are without merit.

In arguing that Nebraska law disallows such discounts, Stacy Ryan cites *Rigel Corp. v. Cutchall*, 511 N.W.2d 519 (Neb. 1994). In *Rigel Corp.*, the Nebraska Supreme Court determined that stock discounts should not be allowed in determining the fair market value of minority shareholders' stock in a statutory redemption action under Neb. Rev. Stat. § 21-2080 (Reissue 1991). 511 N.W.2d at 524–26. The court found stock discounts were proscribed based on the language of § 21-2080 and the court's survey of other state courts' interpretations of similar statutes. *See id.* Nothing in the opinion could reasonably be interpreted to apply to a private agreement, such as the Redemption Agreement. In fact, per the Redemption Agreement, Stacy Ryan agreed that the price paid for her stock would be "the fair market value of the stock *(subject to any applicable discounts or adjustments)* as set forth in the most recent valuation prepared by [Juris Valuation] . . . ." (Filing No. 1 at ECF 34 ¶ 9 (emphasis supplied).) In contrast to *Rigel Corp.*, the relevant language in this case specifically allowed for stock discounts and adjustments.

Stacy Ryan's argument that the applicable discounts mentioned in the Redemption Agreement are subject to the negotiation of the parties also fails. The

language of the Redemption Agreement is unambiguous, and relevant discounts and adjustments were part of the fair market value as determined in the most recent valuation by Juris. Nothing before the Court suggests that what Stacy Ryan was paid did not conform to the Redemption Agreement's treatment of stock discounts.

### c. Conversation with C. Mickey Skinner

Stacy Ryan alleges that she "recently had a conversation with C. Mickey Skinner, a former shareholder . . . who also had his shares redeemed in 2012 for the same price as [Stacy Ryan]." (Filing No. 21 at 11.) Mr. Skinner allegedly "believed the price quoted by Defendants was far too low, and that despite his requests for the most recent valuation and an updated appraisal, Defendants refused." (*Id.*) According to Stacy Ryan, this conversation "supports the fact that Defendants have and continue to manipulate the appraisal process all to the detriment of [Stacy Ryan]." (*Id.* at 11–12.) No information conveyed by Mr. Skinner suggests that the 2011 Juris Valuation should not have been used to determine the price of Stacy Ryan's stock under the Redemption Agreement. The Court will not alter its judgment based on this evidence.

## III. Motion for Leave to File Amended Complaint

Stacy Ryan argues that this Court should grant her leave to file an amended complaint. (Filing No. 21 at 17–19.) Although Federal Rule of Civil Procedure 15(a) states that "[t]he court should freely give leave when justice so requires," the standard is less liberal after an action has been dismissed. *Hawks v. J.P. Morgan Chase Bank*, 591 F.3d 1043, 1050 (8th Cir. 2010) (quoting *Dorn v. State Bank of Stella*, 767 F.2d 442, 443 (8th Cir. 1985)) ("[The Eighth Circuit] ha[s] recognized that '[a]lthough a pretrial

motion for leave to amend one's complaint is to be liberally granted, different considerations apply to motions filed after dismissal.'").

In its Order, the Court noted that Stacy Ryan previously filed a substantially similar action in the District Court of Sarpy County, Nebraska, which she voluntarily dismissed after briefing was complete on a motion to dismiss.[7] For this reason, the Court dismissed her action with prejudice. After first filing in state court, amending her complaint there, then—once she was fully apprised of Defendants' arguments as to her amended complaint's deficiencies—voluntarily dismissing the action, and refiling in this Court, Stacy Ryan does not explain why justice requires that she be given a fourth opportunity to craft a viable complaint. *See Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks omitted) (citing *Hammer v. City of Osage Beach, MO*, 318 F.3d 832, 844 (8th Cir. 2003)) ("A district court may appropriately deny leave to amend where there are compelling reasons such as . . . repeated failure to cure deficiencies by amendments previously allowed . . . .").

## CONCLUSION

For the reasons stated herein, Stacy Ryan's Motion to Alter or Amend the Judgement and her Motion for Leave to File an Amended Complaint will be denied.

---

[7] In its Order, the Court took judicial notice of the state court action. (Filing No. 18 at 16 n.17 (citing *Kramer v. Time Warner*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts . . . not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.")).)

Accordingly,

IT IS ORDERED:

1. Plaintiff Stacy Ryan's Motion to Alter or Amend the Judgment (Filing No. 20) is denied; and

2. Plaintiff Stacy Ryan's Motion for Leave to File an Amended Complaint (Filing No. 23) is denied.

Dated this 14th day of June, 2016.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge